Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

John A. Yanchunis (*Pro Hac Vice* application to be filed)
jyanchunis@forthepeople.com
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505; Fax: (813) 223-5402

Counsel for Plaintiff,
ANNITA EMERSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNITA EMERSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>TOYOTA MOTOR NORTH AMERICA, INC., a California corporation; TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>                    Defendants. | Case No.  2:14-cv-4543<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1.  Violation of Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*<br>2.  Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*<br>3.  Negligence<br>4.  Fraudulent Concealment<br>5.  Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br>6.  Breach of Express Warranty<br>7.  Breach of Implied Warranties |

Plaintiffs Annita Emerson ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc. (collectively, "Defendants" or "Toyota"), on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a consumer protection and automotive defect class action arising out of the purchase of certain Toyota Highlander vehicles designed, marketed, and sold by Defendants, including, but not limited to the following models: Toyota Highlander XU20, Toyota Highlander XU40, Highlander Hybrid MHU28, Toyota Highlander XU50 and other Toyota vehicles equipped with the defective power lift gates (collectively, the "Defective Vehicles").  The Defective Vehicles have defective power lift gates that fail to operate and costs thousands of dollars to fix (the "Defect").

2.      Confronted with customer complaints related to the Defect, Defendants have systematically denied the existence of the Defect, and thus refused to honor any applicable warranties.  As a consequence, Defendants have failed to reimburse vehicle owners for the costs they incur resulting from damages related to the failures of the lift gate and/or refuse to provide repairs free of charge.   As explained in detail below, Defendants were aware of but have failed to notify purchasers regarding the lift gate defects, and these omissions were false, misleading, and had the capacity to deceive.

3.      Plaintiff brings claims individually and on behalf of a class of all other similarly situated purchasers of the Defective Vehicles against Defendants for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), negligence, fraudulent concealment, product liability (design defect), violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"), breach of express warranty, and breach of implied warranties.

CLASS ACTION COMPLAINT

4.      Plaintiff seeks an order requiring Defendants to, among other things: (1) cease the unlawful omissions; (2) conduct a corrective advertising campaign to alert the public of the defect; (3) pay damages and restitution to Plaintiff and Class members in the amounts paid to repair the Defective Vehicles; and (4) reimburse Plaintiffs and Class members for the loss of value of the Defective Vehicles.

**JURISDICTION AND VENUE**

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

6.      The Court has personal jurisdiction over Defendants because Defendants are California corporations and are headquartered in California and are authorized to and conduct substantial business in California, generally and this District, specifically. Defendants have marketed, promoted, distributed, and sold the Defective Vehicles in California.

7.      Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Central District of California, where Defendants are headquartered.

**PARTIES**

8.      Plaintiff Annita Emerson is a California resident.  On June 19, 2009, Plaintiff purchased a 2009 Toyota Highlander (vehicle identification number: JTEES42A992132149) from Toyota Vallejo, a Toyota dealership in Vallejo, California and is currently the owner of the vehicle ("Subject Vehicle").  Plaintiff's Subject Vehicle is equipped with a power lift gate.  Plaintiff's Subject Vehicle came with a 36,000-mile / 3-year warranty.

CLASS ACTION COMPLAINT

9.    Over her lifetime Plaintiff had previously purchased eleven Toyota vehicles.  Plaintiff also purchased a Toyota Venza, which also has a power lift gate like the Toyota Highlander.

10.    Because of Toyota's represented dedication to quality and superior design (discussed below), Plaintiff purchased twelve Toyotas.

11.    On or about March of 2013, the power lift gate on Plaintiff's Subject Vehicle failed when the power arm broke off of the rear power lift gate, and the driver side hinge on the rear power lift gate bowed.  As a result, the rear power lift gate would not close, but instead was stuck in an opened position.  Plaintiff could not manually close the lift gate and, therefore, it remained stuck in this opened position.

12.    As a result of this Defect, Plaintiff brought her Subject Vehicle into Service Outlet, a Toyota certified repair center in San Ramon, California.

13.    On April 23, 2013, Plaintiff made a warranty claim with Toyota to have Toyota pay for repair of the defective power lift gate.  In the warranty claim, Plaintiff wrote that "[t]he power arm broke off of the rear power lift gate when closing. The driver side hinge on the rear power liftgate is bowed. This hatchback/liftgate support device issue occurred March 2013. Subsequently to fix this issue it was $4700.00."

14.    On May 8, 2013, Toyota refused to honor the warranty claim or pay for repairs for Plaintiff's Subject Vehicle.  As a result, Plaintiff had to pay $4700.00 out of pocket to fix the power lift gate.

15.    During the time period that the power lift gate was broken and awaiting repair, Plaintiff was unable to drive Plaintiff's Subject Vehicle.

16.    Plaintiff also did not want to drive Subject Vehicle until the power lift gate was fixed because the Defect poses a severe safety concern in that the power rear door can get stuck in a way that can trap small children.  Plaintiff has a young daughter.

CLASS ACTION COMPLAINT

17.     Defendant Toyota Motor North America, Inc. is a California corporation with its principal place of business at 19001 South Western Avenue, Torrance California 90501.

18.     Defendant Toyota Motor Sales, U.S.A., Inc. is a California corporation with its principal place of business at 19001 South Western Avenue, Torrance California 90501.

19.     Defendants manufacture and distribute the Defective Vehicles to consumers in California and throughout the United States.

## TOYOTA HAS TOUTED THAT ITS VEHICLES HAVE SUPERIOR QUALITY AND DESIGN, BUT THE FACTS SHOW THAT THE POWER LIFT GATES SYSTEMATICALLY FAIL

20.     Toyota came to America in 1957, establishing its headquarters in Hollywood, California in an old Rambler dealership.  Toyota quickly gained traction in the United States auto market and eventually became a leader. In 2003, Toyota sold 6,780,000 vehicles and overtook Ford Motor Company to become second in annual sales behind only General Motors. Three years later, Toyota passed General Motors as the number one brand of cars sold in the United States, with 8,800,000 vehicles sold.

21.     Toyota is currently the world's largest manufacturer of vehicles. For the fiscal year ending in March 2013, Toyota reported billions in worldwide sales.

22.     Toyota holds its brand out as synonymous with "innovation, quality and reliability."  http://www.toyota.com  (cite); https://www.facebook.com/toyota/info (last visited May 30, 2014).  Toyota further states "[f]rom our associates and dealers to our suppliers and customers, our devotion to constant improvement results in an exceptional line of cars and trucks."  https://www.facebook.com/toyota/info (last visited May 30, 2014)

23.     Furthermore, Toyota promises that "[f]rom the early stages of the design process up until our cars roll off the assembly line, quality is key at Toyota. You can see

CLASS ACTION COMPLAINT

it in the materials, the fit and finish, and the innovative new technology that we put into each of our vehicles." http://www.toyota.com/quality (last visited May 30, 2014).

24.     As its dedication to "Continuous improvement," Toyota states:  "Kaizen" means striving for "continuous improvement, and it's a philosophy that we stand by. At our factories, the production line is seen as a progression of customers, not employees – and each team member is responsible for passing along a perfect part or assembly to the next. Every team member has the authority and the responsibility to stop the line if a component     or     assembly     doesn't     meet     our     quality     standards." http://www.toyota.com/quality  (last visited May 30, 2014).

## DEFENDANTS HAVE BEEN  AWARE OF THE DEFECT SINCE AT LEAST 2010, BUT HAVE FAILED TO PUBLICLY ACKNOWLEDGE, DIAGNOSE, AND RECTIFY THE DEFECT

25.     Defendants have  ignored a number of consumer complaints submitted to the NHTSA since at least 2011, and upon information and belief, have received consumer complaints about the defect directly from customers, its dealers, Toyota-certified repair centers, and from NHTSA even prior to that date.

26.     Defendants have also ignored the consumer complaints posted on the Internet, *Youtube.com*, and Toyota's own dedicated websites.  *See e.g.* http://www.toyotanation.com/forum/122-2nd-generation-2008-2013/431214-2010-highlander-lift-gate-arm-broken.html       (last     visited     May     29,     2014); http://www.toyotanation.com/forum/122-2nd-generation-2008-2013/379708-2011-power-rear-door-problem-recall.html     (last     visited     May     29,     2014);     and http://www.toyotanation.com/forum/122-2nd-generation-2008-2013/384975-highlander-power-rear-hatch-stuck.html  (last visited May 29, 2014).

27.     Furthermore, on June 21, 2012, Toyota put out a service bulletin, numbered, TSB-0091-12, entitled, "Power Back Door Does Not Close Properly" ("2012 Service Bulletin").  The 2012 Service Bulletin provides:

Applicability

YEAR(S) MODEL(S) ADDITIONAL INFORMATION

2008 – 2012 Highlander, Highlander

Introduction

**Some 2008 – 2012 model year Highlander and Highlander HV vehicles may exhibit a condition where the Power Back Door does not close properly**. The Back Door may get to the fully closed position and then reverse to the open position. In cases where the Power Back Door does close, a pop or clunk noise may also be heard when the back door latch reaches the striker during the power close function. In some cases, Diagnostic Trouble Codes (DTCs) B2222 and/or U0230 may be present. Use the following information to inspect the Power Back Door and address this condition.

NOTICE

**The purpose of this Service Bulletin is to provide repair instructions for the Power Back Door.** It enhances the durability of the Power Back Door when operating using the Power Close function. When the Power Close function is used, if objects or cargo are continually interfering with the closure of the back door, damage to the back door and/or back door hinges may occur. To minimize the possibility of damage occurring, before closing the Power Back Door, customers should always confirm that objects in the cargo area will not impede or interfere with the closing operation of the back door. Additionally, customers should not use any part of their body to intentionally activate the Jam Protection function of the Power Back Door. Please see the Owner's Manual for additional information on the Power Back Door Jam Protection function.

28.     The 2012 Service Bulletin recommends the following inspection procedure:

**Inspect the Power Back Door Assembly**.

Inspect the upper hinges for any gaps present by placing a 0.05 mm (0.002 in.) or greater feeler gauge between the 2 bolts mounted to the back door as shown in Figure 1. If a gap exists, replacement of both Back Door Hinges AND the Back Door Panel Sub-assembly is required. Proceed to step 2.  If a gap is not found, STOP – this bulletin does NOT apply.

6

CLASS ACTION COMPLAINT

29.     The 2012 Service Bulletin further provides:  "This repair is covered under the Toyota Comprehensive Warranty. This warranty is in effect for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date.  Warranty application is limited to occurrence of the specified condition described in this bulletin."

30.     Defendants knew about the Defect since at least 2010.  Nevertheless, following the notice, Defendants have failed to issue any recall or provide compensation for those who had already repaired their power lift gate or paid for damages resulting from the failure.

31.     Furthermore, Defendants provide a standard express warranty against any "defects in materials or workmanship" in the Defective Vehicles to the purchaser for 36 months or 36,000 miles, whichever occurs first, from the vehicle's in-service date. Defendants have purposefully concealed the Defect so that Defendants can claim that customers' written warranty period has expired before the Defect manifests itself. Defendants' failure to disclose unfairly shifts the cost of repairs to Class members.

32.     The Defect has forced owners of the Defective Vehicles to spend thousands of dollars in replacement and repair costs.

**THE DEFECT IN PLAINTIFF'S VEHICLE**

33.     On or about March of 2013, Plaintiff experienced a failure of the power lift gate in Subject Vehicle.  The power arm broke off of the rear power lift gate, and the driver side hinge of the rear power lift gate bowed.  As a result, the rear door was left stuck in an opened position, and it could not be manually closed.  At this time, Plaintiff's vehicle had been purchased more than three years, so it was not within the scope of the 36 months or 36,000 miles warranty.

34.     In the months prior to the failure of the power lift gate in Plaintiff's Vehicle, Plaintiff had her vehicle serviced at Dublin Toyota, in Dublin, California.  At no time did the employees at Dublin Toyota make her aware that there was a Technical Service Bulletin regarding the power lift gate.

CLASS ACTION COMPLAINT

35.     The damages to Plaintiff's Vehicle were significant, as Plaintiff ultimately was responsible for over $4,700.00 in repairs as well as for the loss of use of the Subject Vehicle and cost of rental *inter alia*.

## TOLLING OF THE STATUTE OF LIMITATIONS

36.     All applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiff and Class members did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendants did not report information within its knowledge to NHTSA or consumers, nor would a reasonable and diligent investigation have disclosed that Defendants have information in its possession about the existence and dangerousness of the Defect and opted to conceal that information.

37.     Since the Defect cannot be detected until it manifests itself, Plaintiff and Class members were not reasonably able to discover the Defect until after purchasing the Defective Vehicles.  Plaintiff and Class members could not reasonably have been expected to learn of or discover Defendants' omissions concerning the Defective Vehicles until after manifestation of the Defect, and only then because they would be forced to discover what happened to their vehicles.  Therefore, the discovery rule applies to all claims asserted by Plaintiff and Class members.

38.     Defendants have known about the Defect since at least 2010, if not earlier, have failed to alert Class members to the Defect, and have told Class members who reported the Defect that the mechanical failures caused by the Defect were attributable to other causes.

39.     Defendants were and remain under a continuing duty to disclose to the NHTSA, Plaintiff, and the Class the true character, quality and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern in that the power door can get stuck in a way that can trap small children, and diminishes the value of the Defective Vehicles.

CLASS ACTION COMPLAINT

40.     Because of the active concealment by Defendants, any and all limitations periods otherwise applicable to Plaintiff's claims have been tolled and Defendants are estopped from relying on any statutes of limitation in its defense of this action.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to rule 23(a) and (b)(2) and/or (b)(3), Fed. R. Civ. P., Plaintiff seeks certification of a class initially defined as follows:

> All persons who formerly or currently own or lease the following Toyota Highlander vehicles in the United States of America: Toyota Highlander XU20, Toyota Highlander XU40, Highlander Hybrid MHU28, Toyota Highlander XU50.

42.     Excluded from the Class are Defendants and their subsidiaries and affiliates, Defendants' executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Product for the purpose of resale.

43.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

44.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that many thousands of consumers have purchased the Products.

45.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.  Whether Defendants violated the CLRA, California Civil Code § 1750, *et seq.*;

b.  Whether Defendants violated the UCL, California Business and Professions Code § 17200, *et seq.*;

c.  Whether Defendants were negligent;

d.  Whether Defendants fraudulently concealed the Defect;

e.  Whether Defendants are liable for a design defect;

f.  Whether Defendants violated the MMWA, 15 U.S.C. § 2301, *et seq.*;

g.  Whether Defendants breached the express warranty;

h.  Whether Defendants breached the implied warranties; and

i.  The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

46.  <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiff and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendants' unlawful conduct.

47.  <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

48.  <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

49.  <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendants' omissions are uniform as to all members of the Class.  Defendants have refused to act

on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation of Consumer Legal Remedies Act – Civil Code § 1750, *et seq.*)

50.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

51.     Plaintiff brings this claim individually and on behalf of the Class.

52.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

53.     Plaintiff and each member of the Class are consumers as defined by California Civil Code §1761(d).  Defendants intended to sell the Products.

54.     The Defective Vehicles are goods within the meaning of Civil Code §1761(a).

55.     Defendants violated the CLRA in at least the following respects:

a.     in violation of  §1770(a)(5), Defendants represented, and continued to represent when the Defect manifested, that the Defective Vehicles have approval, characteristics, and uses or benefits which they do not have (being free of defect);

b.     in violation of §1770(a)(7), Defendants represented and continued to represent when the Defect manifested, that the Defective Vehicles are of a particular standard, quality or grade, when they are of another (having a design defect); and

c.     in violation of §1770(a)(16), Defendants represented and continued to represent when the Defect manifested, that the Defective Vehicles have been supplied in accordance with previous representations (being free of defects), when they were not.

56.     Defendants violated the Act by representing that the Defective Vehicles

were safe and free of defects when they were not and by failing to notify Plaintiff and Class Members of the Defect.  Defendants knew, or should have known, that these omissions were false and misleading.

57.     Defendants' acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

58.     On June 12, 2014, Plaintiffs notified Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations.

59.     If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of receipt of Plaintiff's written notice pursuant to §1782 of the California Act, Plaintiff will amend this Complaint to add claims for actual, punitive, statutory damages, and attorney fees pursuant to the CLRA.  Plaintiff and the Class also will seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution, disgorgement, statutory damages, attorneys' fees and any other relief that the Court deems proper.

60.     Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to the public.

## SECOND CAUSE OF ACTION

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

61.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

62.     Defendants engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*

63.     Defendants' conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (as set forth in the first cause of action), and the Transportation Recall Enhancement, Accountability and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30101, *et seq.* (by failing to

1  timely inform the NHTSA of the Defect and allowing the Defective Vehicles to be sold

2  with the Defect).

3      64.    Defendants' conduct also is unlawful in that it violates the California

4  Secret Warranty Law, California Civil Code § 1795.90, *et seq.*, by:

5          a.    Failing to timely notify all affected vehicle owners that Defective

6  Vehicles exhibit a condition where the power back door does not close properly;

7          b.    Failing to reimburse vehicle owners who paid to have their power

8  lift gates repaired or replaced;

9          c.    Replacing or repairing power lift gates for some customers, but

10  failing to notify all other customers of that benefit; and/or

11          d.    Failing to comply with the applicable notification provisions in the

12  Secret Warranty Law.

13      65.    Defendants' conduct is unfair in that it offends established public policy

14  and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to

15  Plaintiff and Class members.  The harm to Plaintiff and Class members arising from

16  Defendants' conduct outweighs any legitimate benefit Defendants derived from the

17  conduct.  Defendants' conduct undermines and violates the stated spirit and policies

18  underlying the Consumers Legal Remedies Act and the TREAD ACT as alleged herein.

19      66.    Defendants' actions and practices constitute "fraudulent" business

20  practices in violation of the UCL because, among other things, they are likely to

21  deceive reasonable consumers.  Plaintiff relied on Defendants' omissions / affirmative

22  representations in purchasing the Defective Vehicle, driving it at the risk to her safety,

23  and in paying for the repairs.

24      67.    As a direct and proximate result of Defendants' violations, Plaintiff

25  suffered injury in fact and lost money because she purchased the Defective Vehicle and

26  paid the price she paid believing it to be free of defects when it was not and paid for the

27  resulting necessary repairs.

28

CLASS ACTION COMPLAINT

68.     Plaintiff, on behalf of herself and Class members, seeks equitable relief in the form of an order requiring Defendants to refund Plaintiff and all Class members all monies they paid for repairing and/or replacing the Defective Vehicles, for loss of value of the Defective Vehicles resulting from the inherent defect, and injunctive relief in the form of an order prohibiting Defendants from engaging in the alleged misconduct and performing a corrective recall campaign.

### THIRD CAUSE OF ACTION

### (Negligence)

69.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

70.     Plaintiff brings this claim individually and on behalf of the Class.

71.     Defendants had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe for their intended uses.  Defendants had a duty to adequately test its vehicles' safety before selling millions to consumers worldwide.

72.     Defendants had a duty to test vehicles for power lift gate problems once Defendants were on notice that its vehicles had a propensity to have defective power lift gates.  Moreover, Defendants had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its products.

73.     At all times relevant, Defendants sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

74.     Defendants were negligent, and breached the above duties owed to Plaintiff and Class members.

75.     As direct and proximate causes of Defendants' breaches, Plaintiff and the Class have been damaged including, but not limited to, the cost of repairs required due to timing chain tensioner problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

CLASS ACTION COMPLAINT

## **FOURTH CAUSE OF ACTION**

### **(Fraudulent Concealment)**

76.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

77.     Defendants concealed material facts concerning the Defect before, during, and after the sale of the Defective Vehicles to Plaintiff and Class members.

78.     Defendants had a duty to disclose the Defect because it was known only to Defendants, who had superior knowledge and access to the facts, and Defendants knew it was not known to or reasonably discoverable by Plaintiff and Class members.  These concealed facts were material because they directly impact the safety of the Defective Vehicles.  Whether a power lift gate was designed and manufactured with appropriate safeguards is a material safety concern.

79.     Defendants actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiff and the Class.

80.     Plaintiff and the Class were unaware of these concealed material facts and would not have acted as they did if they had known of the concealed facts.  Plaintiff's and Class members' actions were justified.  Defendants were in exclusive control of the material facts and the public, Plaintiff, and the Class did not know of these facts prior to purchasing the Defective Vehicles.

81.     Because of the concealment of the facts, Plaintiff and the Class sustained damage because they purchased and retained Defective Vehicles that are now diminished in value from what they would have been, had Defendants timely disclosed the Defect.

82.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff's and Class members' rights and wellbeing, and to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### (Violation of Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.*)

83.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

84.     Plaintiff and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

85.     Defendants are each a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

86.     The Defective Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

87.     Defendants affirmed the fact, promised, and/or described in writing that the power lift gate would meet a specified level of performance over a specified period of time, namely, that it would not require maintenance and last for the life of the Defective Vehicles.  Defendants' written affirmations of fact, promises, or descriptions related to the nature of the power lift gate in the Defective Vehicles became part of the basis of the bargain between Plaintiff and Defendants.  Defendants refuse to recognize or honor the written power lift gate warranties and, indeed, denies the existence of these warranties. Defendants breached their written warranties when the Defective Vehicles did not perform as represented by Defendants and thereafter when Defendants refused to recognize or honor the warranties.  Defendants' conduct thereby caused damages to Plaintiff and Class members.

88.     The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

89.     Resorting to any informal dispute resolution procedure and/or affording Defendants a reasonable opportunity to cure its breach of written warranties to Plaintiff is unnecessary and/or futile.  At the time of sale to Plaintiff, Defendants knew, should have known, or was reckless in not knowing of its omissions concerning the Defect, but

nevertheless failed to rectify the situation and/or disclose it to Plaintiff.  Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances.  Accordingly, any requirement under the MMWA or otherwise that Plaintiff resort to any informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of written warranties is excused and, thereby, deemed satisfied.

90.  As a direct and proximate result of Defendants' breach of written warranties, Plaintiff and Class members sustained damages and other losses. Defendants' conduct caused Plaintiff's and Class members' damages and, accordingly, Plaintiff and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

## SIXTH CAUSE OF ACTION

### (Breach of Express Warranty)

91.  Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

92.  Plaintiff brings this claim individually and on behalf of the Class.

93.  Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Defective Vehicles.  The terms of that contract include the promises and affirmations to provide vehicles free of "defects in materials or workmanship."  This express warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

94.  All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

95.  Defendants breached the terms of this contract, including the express warranty, with Plaintiff and the Class by not providing a vehicle that could provide the benefits described above (being free from defects).

96.  As a result of Defendants' breach of its express warranty, Plaintiff and the

17

Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## SEVENTH CAUSE OF ACTION

### (Breach of Implied Warranties)

97. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

98. Plaintiff brings this claim individually and on behalf of the Class.

99. Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and Class members purchased the Defective Vehicles.

100. The terms of that contract included the implied promises of merchantability that the product was fit for the ordinary purpose for which it was intended, *i.e.*, not having a defective power lift gate.

101. The terms of the contract also included an implied promise of fitness for a particular purpose, *i.e.*, having a power lift gate that is free of defects, in which Defendants had reason to know the particular purpose for which Plaintiff and Class members required the vehicles and Plaintiff and Class members relied on Defendants' skill and judgment to select and furnish suitable vehicles that were fit for that purpose.

102. These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

103. All conditions precedent to Defendants' liability under these contracts have been performed by Plaintiff and the Class.

104. Defendants breached the terms of these contracts with Plaintiff and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing vehicles that were fit for the purpose of safe driving and were inadequately advertised due to Defendants' failure to disclose the Defect.

105. As a result of Defendants' breach of its implied warranties, Plaintiff and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

A.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendants to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.      Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.      Ordering Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of the Class;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective recall campaign;

F.      Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff's and the other members of the Class;

G.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  June 12, 2014                    Respectfully submitted,


**AHDOOT & WOLFSON, PC**


_____
Robert Ahdoot
Tina Wolfson
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111
Fax: 310-474-8585
Email: rahdoot@ahdootwolfson.com
            twolfson@ahdootwolfson.com

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice* to be filed)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: 813-223-5505
Fax: 813-223-5402
Email: jyanchunis@forthepeople.com


Counsel for Plaintiff,
Annita Emerson

CLASS ACTION COMPLAINT

**<u>AFFIDAVIT OF ROBERT AHDOOT</u>**

I, Robert Ahdoot, declare as follows:

1.     I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Annita Emerson in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research and personal knowledge, Defendants do business and have their principal place of business within the County of Los Angeles as alleged in this Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 12th day of June 2014 in West Hollywood, California that the foregoing is true and correct.

_____
Robert Ahdoot

CLASS ACTION COMPLAINT